UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN HATHAWAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFFERSON COUNTY, a political subdivision of the State of Idaho; SHAYNE YOUNG, in his individual and official capacities; SCOTT HANCOCK, in his individual and official capacities; ROGER CLARK, in his individual and official capacities,<br><br>　　　　Defendants. | Case No. 4:23-cv-00254-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Kevin Hathaway's Motion to Compel Production of Asserted Privileged Communications and Comparator Information and Documents (Dkt. 21). For the reasons described below, the Court will grant the motion in part and deny the motion in part.

# BACKGROUND

In May 2023, Mr. Hathaway filed a complaint against Jefferson County and

MEMORANDUM DECISION AND ORDER - 1

the individual defendants alleging violations of the American with Disabilities Act, Idaho Human Rights Act, the Family and Medical Leave Act, and Idaho's Protection of Public Employees Act. *Complaint*, Dkt. 1. The defendants filed an answer denying the allegations and the parties proceeded to discovery. *Answer*, Dkt. 21. The present dispute arises from the defendants' designation of several communications as privileged and their objection to several of Mr. Hathaway's discovery requests as overly broad and unduly burdensome. After complying with this Court's discovery dispute procedures, Mr. Hathaway filed his motion to compel in May 2024. Dkt. 21. After briefing on the motion was complete, the Court ordered in camera review of the documents the defendants claimed were privileged. Dkt. 28. In compliance with that order, the defendants submitted the disputed documents for review in September 2024.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery. It provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to

**MEMORANDUM DECISION AND ORDER - 2**

be discoverable.

Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the moving party must make a threshold showing of relevance, *see, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper. *See Blakenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## ANALYSIS

Mr. Hathaway's motion to compel concerns two categories of information. First, he requests the Court compel the defendants to produce four emails withheld on the basis of attorney-client privilege. Second, he requests the Court order the defendants to produce comparator information in response to several interrogatories and requests for production. The Court will address the emails before turning to the comparator information.

### A. Emails

The defendants contend all four of the emails are protected from disclosure

by the attorney-client privilege. The defendants claim that two attorneys are included on these communications, Mark Taylor and Carl Ericson, so the privilege applies. At the time these emails were sent, Mark Taylor was the Jefferson County Prosecutor and Carl Ericson was an attorney employed by Idaho Counties Risk Management Program. Mr. Hathaway insists the privilege does not apply because the defendants have failed to establish the emails fall within the scope of the privilege.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corporation*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Communications are covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). While this privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice[, i]f the advice sought is not legal advice . . . then the privilege does not exist." *United States v. Richey*, 632 F.3d 559, 566 (9th

**MEMORANDUM DECISION AND ORDER - 4**

Cir. 2011). "As with all evidentiary privileges, the burden of proving the attorney-client relationship applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investments/Indicators Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

At the outset, the September 22, 2021, February 9, 2022, and February 10, 2022 are not privileged because the purpose of the email was not to seek legal advice. The September 13, 2021 email to Mr. Ericson, however, did request legal advice and is properly withheld based on the attorney-client privilege. The Court will first address the three non-privileged emails before turning to the September 13, 2021 email.

### 1. September 22nd, February 9th, and February 10th Emails

Turning first to the non-privileged communications. The September 22, 2021, February 9, 2022, and February 10, 2022 emails from Rebecca Squires, the Human Resources Director for Jefferson County, all copied either Mr. Taylor or Mr. Ericson, or both. "Merely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013). The emails are only privileged if the "primary purpose of the communication was securing legal advice." *United States v. ChevronTexaco Corporation*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). None

MEMORANDUM DECISION AND ORDER - 5

of these emails are primarily, if at all, for the purpose of securing legal advice. The September 22nd email is a summary of Ms. Squires' conversation with Mr. Hathaway. The February 9th and 10th emails are, similarly, summaries of Ms. Squires' research regarding certification for floodplain manager. These notes are not privileged communications. *See Nelson v. NAV-RENO-GS, LLC*, No. 3:12-cv-0165-LRH (VPC), 2013 WL 2475862, at *4 (D. Nev. 2013) ("The notes were prepared by non-attorneys, they do not contain any legal advice from Mr. Hall to Mr. Lundgren, nor are they communications between an attorney and a client. They are recorded facts that Mr. Lundgren and Ms. Kite took during employee interviews and nothing more.").

The defendants have not suggested that these emails were prepared at the direction of counsel or otherwise explained why they would fall within the scope of the privilege. *See e.g.*, *Walker v. Contra Costa County*, 227 F.R.D. 529, 536 (N.D. Cal. 2005) (holding report prepared by HR representative was not protected by the privilege where it "contain[ed] no attorney-client communications, and it was neither prepared by nor addressed to an attorney."). Again, it is not enough to say that the attorneys were copied on the email in order to bring these communications within the protection of the privilege. "The emails do not request legal advice from either of the attorney recipients, nor is there any indication that

**MEMORANDUM DECISION AND ORDER - 6**

either attorney responded to the emails. Counsel's mere inclusion among the recipients of the initial emails is not sufficient to afford protection under attorney-client privilege." *Bruno v. Equifax*, No. 2:17-cv-327-WBS-EFB, 2019 WL 633454, at *5 (E.D. Cal. Feb. 14, 2019). Accordingly, the defendants must produce the September 22nd, February 9th, and February 10th emails.

### 2. September 13th Email

The defendants claim communications between County employees and Mr. Ericson, and ICRMP attorney, are protected by the attorney-client privilege. Mr. Ericson received the September 13th and September 22nd emails from Ms. Squires. As discussed above, the September 22nd email was not made for the purpose of obtaining legal advice. The September 13th email, however, was made for the purpose of seeking legal advice from a legal advisor in his capacity as such. This communication, therefore, is protected by the attorney-client privilege and may be withheld.

Mr. Hathaway argues that this email is not privileged because there is no protection for communications between an insurer and its insured until the insurer acknowledges its duty to defend. Indeed, courts have generally rejected "any sweeping general notion that there is an attorney-client privilege in insured-insurer communications." *See Linde Thomson Langworthy Kohn & VanDyke, P.C. v. RTC*,

**MEMORANDUM DECISION AND ORDER - 7**

5 F.3d 1508, 1514–1515 (D.C. Cir. 1993). For this reason, had Ms. Squires emailed a non-attorney at ICRMP, the communication likely would not receive any protection. Ms. Squires, however, emailed an attorney for the purpose of seeking legal advice, which necessarily distinguishes this communication from those in the cases referenced by Mr. Hathaway. *See In re Imperial Corp. of America*, 167 F.R.D. 447, 452 (S.D. Cal. 1995) (requiring production of letter from insured to claims adjustor "analyz[ing] the allegations contained in the complaint. . . and provid[ing] a detailed explanation of the investigation of the allegations."). Certainly, the relationship between Mr. Ericson and the County is somewhat unusual because the legal services are connected to ICRMP agreement to insure the County. *See* Pl.'s Ex. A, Dkt. 25-2 (providing that ICRMP will waive $6,000 deductible for employment claims if the County consults with ICRMP, or an attorney assigned by it, before taking the employment action). Nonetheless, a review of the September 13th email makes clear the purpose of that communication is to obtain legal advice, not advice regarding insurance coverage. Given the communication is made to an attorney for the purpose of legal advice, the email is protected by the privilege and is properly withheld on that basis.

    **B.**    **Comparator Information**

The defendants withdrew their objection to producing personnel files on

**MEMORANDUM DECISION AND ORDER - 8**

privilege and privacy grounds. They, however, maintain that that Mr. Hathaway's discovery requests are overbroad and unduly burdensome. These interrogatories and requests for production ask for information from the past five years about any employees who used FMLA leave for a work injury, used FMLA leave for any injury, used PTO to take off time for medical reasons without concurrently using FMLA leave, or required time off from work due to a work injury associated with worker's compensation claim. *See* Pl.'s Exs. A, B, Dkt. 21-2.

The defendants argue these requests are overly broad because they seek information from all County employees, not only those who are "similarly situated" to Mr. Hathaway. A plaintiff alleging a disparate impact claim of discrimination must, among other things, show that the employer treated "similarly situated" individuals outside of the plaintiff's class more favorably than the plaintiff. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). Employees are considered similarly situated when they are similar "in all material respects" to the plaintiff. *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010). Whether employees are similarly situated "is a fact intensive inquiry, and what facts are material will vary depending on the case. *Id.* For instance, in *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1125–26 (9th Cir. 2009), the Ninth Circuit held female pilot with deficient communication

**MEMORANDUM DECISION AND ORDER - 9**

skills was similarly situated to male pilots with deficient technical skills as both sets of deficiencies could be addressed in training. Likewise, it has found employees similarly situated where they "violated similar company policies" and the employer oversaw discipline "on a national level in an effort to ensure [the employees] are subject to consistent standards." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011).

The defendants suggest that only those employees who are salaried, have "extensive supervisory experience," and have managed other employees of Jefferson County are "similarly situated" to Mr. Hathaway. *Response* at 5–6, Dkt. 23. They suggest that Mr. Hathaway's requests be narrowed to include employees grouped under the same internal "code" as plaintiff or, in the alternative, employees that are classified as "Grade 6 and above." *Id.* at 6. Mr. Hathaway, in contrast, argues that these distinctions are immaterial. Rather, any County employee may be an appropriate comparator because the FMLA, PTO, and workers' compensation policies apply to all employees, not only salaried employees or those with supervisory roles.

The Court agrees that the requests are not overbroad because all county employees are subject to the same policy and personnel decisions are made by the same individuals, regardless of the rank or duties of an employee."'[W]hen uneven

**MEMORANDUM DECISION AND ORDER - 10**

discipline is the basis for a claim of discrimination, the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor,' rather than job duties and rank." *Davis v. Eastern Idaho Health Servs., Inc.*, No. 4:16-cv-193-BLW, 2017 WL 1737723, at *3 (D. Idaho May 3, 2017). Moreover, Rule 26 permits broad discovery. It would be inappropriate and unworkable to require plaintiffs to limit discovery only to those employees that a fact-finder would ultimately conclude to be appropriate comparators. As such, Mr. Hathaway's requests are not overbroad.

    Further, it is of no matter that searching the defendants' records would be burdensome because Jefferson County does not maintain electronic copies of its files. The expense of searching non-electronic files is "a burden of [the County's] own creation." *Davis*, 2017 WL 1737723, at *4. "Permitting a party to [limit] discovery by keeping files in a disorderly or unsearchable manner would improperly benefit the producing party while precluding the requesting party from obtaining clearly relevant material." *Reid v. Cumberland Cty.*, 34 F. Supp. 3d 396, 414 (D.N.J. 2013). Searching the County's files, even by hand, is not unduly burdensome. There are fewer than 500 employee files to search and, while hand-reviewing the files is perhaps inconvenient, it is the cost of storing its files in the manner the County has chosen. Accordingly, the defendants shall respond to Mr.

Hathaway's discovery requests within 30 days of the issuance of this order.[1]

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Compel (Dkt. 21) is **GRANTED in part and DENIED in part.**

2. Defendants shall respond to Plaintiff's discovery requests and produce the non-privileged documents within 30 days of the issuance of this order.

DATED: December 2, 2024

B. Lynn Winmill
U.S. District Court Judge

---

[1] Should the defendants need additional time to conduct this review the parties may agree to, or the defendants may move for, an extension of time to comply with the discovery requests.